■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KARON McFARLAND, Appellant. [964 NYS2d 286]—

Garry, J. Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered March 21, 2011 in Schenectady County, upon a verdict convicting defendant of the crimes of assault in the first degree, burglary in the first degree (four counts) and criminal possession of a weapon in the second degree (two counts).

In February 2010, the victim was shot in the face in her home in the City of Schenectady, Schenectady County. Thereafter, defendant was arrested and charged with several crimes related to the shooting. Following a jury trial, he was convicted of assault in the first degree, burglary in the first degree (four counts) and criminal possession of a weapon in the second degree (two

counts), and sentenced to an aggregate prison term of 31 years followed by five years of postrelease supervision. Defendant appeals.

Initially, we find the evidence that defendant "knowingly enter[ed]" the victim's dwelling legally sufficient to support his burglary convictions (Penal Law § 140.30). The victim testified that she was inside her second-floor apartment when her doorbell began ringing repeatedly, and she heard defendant—a former friend whom she described as her "stalker"—outside the locked first-floor front door, demanding to be let in. She refused and attempted to ignore him, but then, upon hearing banging sounds, she stepped onto a stair landing where she saw defendant kicking repeatedly at a plexiglass window in the door until it fell inward. The victim remembered nothing more of the incident, but a police officer testified that, upon arriving at the scene shortly thereafter, he found the window on the floor inside the locked door, leaving a space large enough to step through; the victim was lying on the stair landing with gunshot wounds. "[T]he entry element of burglary is satisfied 'when a person intrudes within a building, no matter how slightly, with any part of his or her body' " (*People v Prince*, 51 AD3d 1052, 1054 [2008], *lv denied* 10 NY3d 938 [2008], quoting *People v King*, 61 NY2d 550, 555 [1984]), and kicking in a window constitutes an entry even when the perpetrator then flees without further intruding into the building (*see People v Cleveland*, 281 AD2d 815, 816 [2001], *lv denied* 96 NY2d 900 [2001]). Accordingly, even before considering the additional evidence discussed below, there was "a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion" that defendant entered the victim's home (*People v Hall*, 57 AD3d 1222, 1225 [2008], *lv denied* 12 NY3d 817 [2009]).

Defendant failed to preserve the legal sufficiency challenges he now raises to his other convictions, but in reviewing his claim that the verdict is contrary to the weight of the evidence, this Court evaluates the evidence adduced as to each element of the crimes (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Tucker*, 95 AD3d 1437, 1438 [2012], *lv denied* 19 NY3d 1105 [2012]). With regard to his convictions for criminal possession of a weapon in the second degree, he contends that, as no witnesses saw him carrying a weapon and no weapon or shell casings attributable to the crime were ever found, the People failed to prove that he "possesse[d] a loaded firearm" (Penal Law § 265.03 [1] [b]; *see* Penal Law § 265.03 [3]). However, a State Police firearms examiner testified that spent bullets found at the scene were fired either by a pistol or a revolver, thus

establishing that the weapon used was a firearm within the meaning of Penal Law § 265.00 (3). Circumstantial evidence that defendant possessed this firearm included the victim's testimony that he was the man who kicked in her door just before she was shot, as well as that of a witness in her apartment who heard footsteps "charg[e]" up the stairs, followed by four loud "bangs" and the sound of footsteps running down again moments before the wounded victim was found on the landing. Neighbors heard gunshots and saw a man fitting defendant's description run out of the victim's front door and drive away, and a dollar bill bearing defendant's "touch DNA" was found on the victim's stairs. Defendant offers an alternate explanation for the presence of this DNA in that he had obtained cash for the victim earlier that evening, and points to conflicting details in the witness testimony describing the suspect seen running from the scene and other events surrounding the shooting. These inconsistencies presented issues of credibility to be resolved by the jury (see People v Jackson, 65 NY2d 265, 272 [1985]; People v Moyer, 75 AD3d 1004, 1006 [2010]), and we are unpersuaded that the jury failed to give the evidence the proper weight in concluding that defendant possessed the loaded firearm with which the victim was shot (see People v Mateo, 13 AD3d 987, 988 [2004], lv denied 5 NY3d 883 [2005]; People v Jackson, 302 AD2d 748, 749-750 [2003], lv denied 100 NY2d 539 [2003]). Moreover, viewing the evidence in a neutral light and weighing the probative force of the conflicting testimony and inferences to be drawn from the evidence (see People v Mariano, 101 AD3d 1367, 1367-1368 [2012]; People v Clark, 51 AD3d 1050, 1051-1052 [2008], lv denied 10 NY3d 957 [2008]), we find no reason to disturb any of the other convictions.

Supreme Court properly refused to suppress a police tape recording of a telephone conversation between defendant and his sister. During questioning at the police station, defendant asked if he could make a telephone call, and a detective escorted him to a desk phone and dialed his sister's number for him. Throughout the ensuing conversation, the detective remained within five feet of defendant, who did not whisper or otherwise attempt to conceal the discussion and even engaged the detective in part of the conversation by asking him questions. Defendant contended that he had a reasonable expectation of privacy during this conversation, and now further asserts that police committed the crime of eavesdropping by recording this conversation (see Penal Law § 250.05). We agree with Supreme Court's rejection of the privacy claim, and the unpreserved eavesdropping claim does not warrant modification in the interest of justice (compare People v Lasher, 58 NY2d 962, 963 [1983];

*People v Ogburn*, 46 AD3d 1018, 1019 [2007], *lv denied* 10 NY3d 769 [2008]).

Finally, defendant contends correctly, in part, that there was an error in his sentencing. Concurrent sentences are required "for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other," but consecutive sentences may be imposed when the actions underlying the crimes are separate and distinct (Penal Law § 70.25 [2]; *see People v Laureano*, 87 NY2d 640, 643 [1996]; *People v Wright*, 1 AD3d 707, 708-709 [2003], *lv denied* 1 NY3d 636 [2004]). Supreme Court sentenced defendant to a prison term of 22 years for the conviction for assault in the first degree pursuant to Penal Law § 120.10 (4), and to a consecutive term of nine years on his conviction for burglary in the first degree pursuant to Penal Law § 140.30 (1). As these crimes each required the commission of disparate and separate acts, the sentences were appropriate (*see People v Faulkner*, 36 AD3d 951, 953 [2007], *lv denied* 8 NY3d 922 [2007]; *People v Kownack*, 20 AD3d 681, 682 [2005]).

However, there was an error made at the next step; it appears that Supreme Court transposed two of the charge numbers from the indictment in pronouncing parts of the sentence. Read as a whole, it appears from the sentencing minutes that the court intended to impose concurrent sentences upon the remaining burglary convictions, such that the four burglary sentences would be concurrent to each other but consecutive to the assault sentence—but as a result of the transposition of the count numbers, each of the three remaining burglary sentences was instead made consecutive to the initial burglary sentence and concurrent to the assault sentence. Further, this error was captured and set forth within the commitment order. As defendant contends, the sentences on the four burglary convictions must run concurrently with one another (*see* CPL 300.30 [3], [4]; Penal Law § 140.30 [1], [2], [3], [4]; *People v Kulakov*, 278 AD2d 519, 520-521 [2000], *lv denied* 96 NY2d 785 [2001]; *People v Daniels*, 165 AD2d 610, 611-612 [1991], *lv denied* 78 NY2d 1010 [1991]). Finally, the sentences for the two convictions for criminal possession of a weapon were properly stated, such that these two nine-year prison terms run consecutively to the assault sentence but concurrently with each other and the other nine-year sentences. Thus, as Supreme Court stated at the conclusion of sentencing, the result is an aggregate prison term on all charges of 31 years, together with five years of postrelease supervision.

Lahtinen, J.P., Stein and Spain, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as imposed consecutive sentences for burglary in the first degree on counts 6, 7 and 8 of the indictment and directed these sentences to run consecutively to the sentence imposed on count 5 of the indictment and concurrently with the sentence imposed for assault in the first degree on count 4 of the indictment; said burglary sentences are to run concurrently with one another and with the sentences for criminal possession of a weapon in the second degree on counts 9 and 10 of the indictment, and consecutively to the sentence for assault in the first degree on count 4 of the indictment; and, as so modified, affirmed.